**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 3:26-cv-00129 |
| | ) | |
| v. | ) | |
| | ) | |
| **MARGIN RACING INC. (*F/K/A* MBRP, INC.) and MBRP, LTD.,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## COMPLAINT

The United States of America ("United States"), by the authority of the United States' Attorney General and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges:

### I.    NATURE OF THE CASE

1.    This civil action seeks penalties for the Defendants' violations of Clean Air Act Section 203(a)(3), 42 U.S.C. § 7522(a)(3).  From approximately August 2018 to July 2019, the Defendants, MarGin Racing Inc. (*f/k/a* MBRP, Inc.) and MBRP, Ltd., sold or offered to sell thousands of devices that bypass, defeat, or render inoperative emission controls installed on motor vehicles or motor vehicle engines (referred to as "Aftermarket Defeat Devices") in violation of 42 U.S.C. § 7522(a).

2.    Bypassing, defeating, or disabling emission control equipment on motor vehicles and engines threatens public health and welfare.  Motor vehicle emissions are linked to illnesses

including heart and lung disease, heart attacks, aggravated asthma, and others.  To prevent these threats to public health and welfare, the Clean Air Act imposes stringent standards that limit air pollution emitted from motor vehicles and engines.  42 U.S.C. § 7521(a).  These standards are paired with a prohibition on the manufacture, sale, and installation of Aftermarket Defeat Devices that disable the emission controls motor vehicles need to meet the Clean Air Act's emissions standards.  *Id*. at § 7522(a).

## II.    JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 7524(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.      This Court has personal jurisdiction over the parties.  Violations alleged in this Complaint occurred in this judicial district, and the Defendants have conducted business here, including by selling and advertising its automotive products.

5.      Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(c)(2), and 1395(a), as well as 42 U.S.C. § 7524, because the Defendants do business in this judicial district and alleged violations occurred here.

## III.    DEFENDANTS

6.      MarGin Racing Inc. (*f/k/a* MBRP, Inc.) is a corporation with its principal office at 300 West Browns Road, Huntsville, Ontario, Canada P1H 0H9.

7.      MBRP, Ltd. is a corporation with its principal office at 315 Old Ferguson Road, Huntsville, Ontario, Canada P1H OH2.

8.      Each Defendant is a "person" within the meaning of 42 U.S.C. § 7602(e).

## IV.    BACKGROUND

### A.    Legal Background

#### 1.    Statutory and Regulatory Overview

9.    Title II of the Clean Air Act, as amended, 42 U.S.C. §§ 7521-7590, and the regulations promulgated thereunder, establish standards to limit air pollution from motor vehicles and motor vehicle engines. *See* 42 U.S.C. § 7521(a). These standards flow from Congress' finding that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare. . ." 42 U.S.C. § 7401(a)(2).

10.    Air pollutants such as nitrogen oxides ($NO_x$), particulate matter (PM), non-methane hydrocarbons (NMHCs), and carbon monoxide (CO) are emitted from motor vehicles and motor vehicle engines. These air pollutants "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a).

#### 2.    The Clean Air Act Prohibits Defeat Devices

11.    Manufacturers comply with the Clean Air Act's emission standards for motor vehicles and motor vehicle engines by installing a variety of software and hardware elements that are designed to monitor and control emissions of pollutants (referred to as "Emissions Related Elements of Design"). *See* 40 C.F.R. §§ 86.094-2 and 86.1803-01 (both defining "element of design").

12.    To ensure that the Emissions Related Elements of Design remain operative during a motor vehicle's lifetime, Clean Air Act Section 203(a), 42 U.S.C. § 7522(a), prohibits

manufacturing, selling, installing, and offering to sell devices (known as "defeat devices") that render inoperative Emissions Related Elements of Design.

13.    Specifically, the Clean Air Act prohibits any person from manufacturing or selling, offering to sell, or installing:

> any part or component intended for use with, or as a part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations [promulgated under Title II of the Clean Air Act ], [ ] where the person knows or should know that such part or component is being offered to sell or installed for such use or put to such use.

42 U.S.C. § 7522(a)(3)(B).

14.    Clean Air Act Section 203(a) also prohibits any person from causing a violation of Section 203(a)(3)(B).  42 U.S.C. § 7522(a).

### 3.    Penalties for Violating the Prohibition

15.    In accordance with Section 205(a) of the Clean Air Act, 42 U.S.C. § 7524(a), as modified by 40 C.F.R. § 19.4 (2025), any person violating Section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B), or causing a violation thereof, is subject to civil penalties of up to $5,911 for each violation occurring after November 2, 2015, where the penalty is assessed on or after January 8, 2025.

16.    Each part or component manufactured, sold, offered for sale, or installed in violation of Clean Air Act Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), is a separate violation of Section 203(a)(3)(B).  *See* 42 U.S.C. § 7524(a).

### B.    Background on Aftertreatment Systems

17.    "Aftertreatment Systems" are one type of Emissions Related Element of Design. These systems function to "reduce emissions in the engine exhaust before it is exhausted to the

environment." 40 C.F.R. § 1068.30. A motor vehicle's Aftertreatment System consists of hardware in the installed "stock" exhaust system downstream of the exhaust valve, as well as software that runs one or more Electronic Control Units. Electronic Control Units are onboard computers that monitor and control vehicle operations, including the operation of Emissions Related Elements of Design.

18.     Aftertreatment Systems include, but are not limited to, Diesel Particulate Filters, Selective Catalytic Reduction Systems, and Diesel Oxidation Catalysts. Each of these Aftertreatment Systems (and their components) is a "device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [Clean Air Act] regulations" within the meaning of Section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B).

19.     Diesel Particulate Filters (DPFs). A DPF is a filter that captures particulates or soot from engine exhaust, thereby decreasing PM emissions. By design, soot that collects in the DPF is periodically burned off by elevated exhaust temperatures in a process referred to as active or passive regeneration. The DPF includes all hardware, parts, sensors, subassemblies, auxiliary emission control devices, Electronic Control Unit software (for calibrations), and other components that collectively constitute the system for implementing this emissions control strategy.

20.     Selective Catalytic Reduction Systems (SCRs). An SCR is a type of catalytic converter or catalyst that reduces $NO_x$ emissions by chemically converting $NO_x$ in exhaust gas into nitrogen and water. The SCR includes all hardware, parts, sensors, subassemblies, auxiliary emission control devices, calibrations, and other components that collectively constitute the system for implementing this emissions control strategy.

21.    Diesel Oxidation Catalyst (DOC).  A DOC is a type of catalytic converter.  As exhaust gas passes through the DOC, the coating of precious metal causes a catalytic reaction that breaks down CO and NMHCs in the exhaust into less harmful chemical components.  The DOC includes all hardware, parts, sensors, subassemblies, auxiliary emission control devices, calibrations, and other components that collectively constitute the system for implementing this emissions control strategy.

## V.    GENERAL ALLEGATIONS

22.    At all times relevant to this Complaint, the Defendants manufactured, sold, and/or offered to sell aftermarket automotive products in the United States, including through automotive part distributors based in the United States.  One such distributor was Meyer Distributing, Inc., a corporation registered under the laws of the State of Indiana with its principal office in Jasper, Indiana.

23.    From August 2018 to July 2019, the Defendants sold or offered to sell aftermarket automotive products that included the Aftermarket Defeat Devices identified in Appendix A. These devices – consisting of hardware products that are physically installed in motor vehicles – had a principal effect of "bypassing, defeating, or rendering inoperative" Emissions Related Elements of Design within the meaning of Section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B).

24.    The Aftermarket Defeat Devices identified in Appendix A disable, replace, delete, interfere with, bypass, and/or require the physical removal of one or more components necessary for Aftertreatment Systems, such as DPFs, DOCs, and SCRs, to properly function.  The Defendants' hardware products include pipes that physically replace all or a portion of the exhaust system that contains the Aftertreatment System originally installed by vehicle or engine

manufacturers.  This Complaint collectively refers to these products as "Aftertreatment System Delete Hardware."

25.    From August 2018 to July 2019, the Defendants sold or offered to sell at least 37 different types of Aftertreatment System Delete Hardware products.  Subject to a reasonable opportunity for investigation and discovery, the Defendants knew or should have known that these Aftertreatment System Delete Hardware products were Aftermarket Defeat Devices.  The Defendants' installation instructions and website listings describe some of the Aftertreatment System Delete Hardware the Defendants sold or offered to sell as "Delete Pipe," "DPF delete pipe," and "DPF & CAT race pipe."  These terms indicate that these products function as defeat devices.

26.    According to the Defendants' product descriptions, catalogs, marketing materials, instruction manuals, price lists, and/or other documents, the Aftertreatment System Delete Hardware products they sold or offered to sell were intended to be used on motor vehicles including light-duty passenger cars, diesel trucks, and diesel engines manufactured by General Motors, Ford, Stellantis, FCA, and Cummins.

## CLAIM FOR RELIEF

*Violations of 42 U.S.C. § 7522(a)(3)(B)*
*Sale and/or Offer to Sell Aftertreatment System Delete Hardware*

27.    The United States re-alleges Paragraphs 1 - 26 as if fully set forth herein.

28.    From August 2018 to July 2019, the Defendants sold and/or offered to sell, and/or caused the sale or offer to sell, the Aftertreatment System Delete Hardware products identified in Appendix A.

7

29.     The Aftertreatment System Delete Hardware products in Appendix A were "intended for use with, or as part of, [a] motor vehicle or motor vehicle engine" within the meaning of 42 U.S.C. § 7522(a)(3)(B).

30.     Each Aftertreatment System Delete Hardware product in Appendix A is "a part or component" with "a principal effect" "to bypass, defeat, or render inoperative" one or more components necessary for the function of an Aftertreatment System within the meaning of 42 U.S.C. § 7522(a)(3)(B).

31.     Subject to a reasonable opportunity for investigation and discovery, the Defendants knew or should have known that each Aftertreatment System Delete Hardware product in Appendix A had a principal effect of bypassing, defeating, and/or rendering inoperative an Aftertreatment System.

32.     Each sale or offer to sell the Aftertreatment System Delete Hardware products in Appendix A that occurred from August 2018 to July 2019 is a separate violation of 42 U.S.C. § 7522(a)(3)(B).  *See* 42 U.S.C. § 7524(a).

33.     For each violation of 42 U.S.C. § 7522(a)(3)(B), the Defendants are each individually subject to civil penalties of up to $5,911.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

A.     Assess civil penalties against each Defendant of up to $5,911 for each part or component Defendant sold, offered to sell, or caused thereof, in violation of 42 U.S.C. § 7522(a)(3)(B);

B.     Award the United States its costs and disbursements in this action; and

C.     Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


*s/ Steven Shermer*
STEVEN D. SHERMER
District of Columbia Bar No. 486394
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone: (202) 532-5045
Email: Steven.Shermer@usdoj.gov


THOMAS E. WHEELER II
United States Attorney
Southern District of Indiana

*/s/ Joi Kamper*
Joi Kamper
Assistant United States Attorney
Southern District of Indiana
135 N Pennsylvania Street, Suite 2100
Indianapolis, Indiana 46204
(317) 229-2418
Joi.Kamper@usdoj.gov

OF COUNSEL:

JAMES BRIDGES
Associate Regional Counsel
U.S. Environmental Protection Agency|
77 West Jackson Boulevard
Chicago, IL 60604

EDWARD KULSCHINSKY
Attorney Advisor
U.S. Environmental Protection Agency
Washington, D.C.